IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **STEPHANIE WINGFIELD** )<br>(Plaintiff) )<br>)<br>)<br>**VS.** )<br>)<br>)<br>**ALISON HALL, ROMONA MARCUS,** )<br>**CITY OF DOTHAN** )<br>(Defendant) ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

**Plaintiff Stephanie Wingfield**, through the undersigned counsel, asserting the following causes of action and seeking to recover the following damages against Defendants City of Dothan.

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343.

2. This Court has subject matter jurisdiction under 42 U.S.C. § 2000e *et seq.,* TitleVII of the 1964 Civil Rights Act ("Title VII") and 28 U.S.C. §1983 "Section 1983").

3. Plaintiff has complied with all jurisdictional prerequisites for maintaining this action under Title VII. She filed a charge of discrimination with

the Equal Employment Opportunity Commission ("EEOC") on June 26, 2022 and obtained a Notice of Right-to-Sue dated and received on December 21, 2022. This action was filed within ninety days of her receipt of the notice. A copy of the notice is attached herewith as Exhibit 1.

4. The actions complained of in this lawsuit took place in the Southern Division of the Middle District of Alabama.

## PARTIES

5. Plaintiff Stephanie Wingfield ("Ms. Wingfield" or "Plaintiff") is a black female citizen of the United States and of the State of Alabama. She is a resident of Houston County. Until June 21, 2022, she worked as a Recreation Program Coordinator and oversaw the At-Risk and Summer Feeding Programs managed by the City.

6. Defendant City of Dothan is a municipality incorporated in the State of Alabama.

7. Defendant Alison Hall was at all times relevant a resident of Houston County, Alabama; an employee of Defendant City of Dothan; an administrator within the Department of Leisure Services; and since 2020 the Director of the Department of Leisure Services.

8.    Romona Marcus was at all times relevant a resident of Houston County, Alabama and the director of the Finance Department of Defendant City of Dothan.

## FACTS

9.    From 2015 until 2021, Ms. Wingfield was employed as a Recreation Program Coordinator with the City of Dothan. Ms. Wingfield worked diligently for six years as a passionate and effective advocate for the health and proper nutrition of at-risk low-income children within the city of Dothan. She received consistently good community reception and had no negative disciplinary or managerial issues until the below events occurred.

10.   The Feeding program provides free meals to children 18 and under, reimbursed through the Alabama Department of Education.

11.   The reimbursement amount for the feeding program is based on the number of eligible meals served to children 18 and under.

12.   Ms. Wingfield regularly discussed the logistics of the feeding program with her counterpart within the Dothan Board of Education, including discussions about vendor guidelines, all of which were regularly followed.

13.   In September 2020, shortly after Defendant Hall assumed leadership of the department, she indicated to Ms. Wingfield that she wanted to end the feeding program and began taking steps to do so.

14. Citizens and elected officials rallied public support around the feeding program, forcing Defendant Hall to shelve the plan to end the program, but she did eliminate the program's secretarial assistance, adding record-keeping to the duties of the already-overloaded meal delivery drivers.

15. There was some racial tension within the city staff regarding the feeding program, in large part because most of the people working in the finance department were white while people being helped by the program were mostly Black. One white driver resigned rather than being put back onto a route where he would need to interact primarily with Black people.

16. In November of 2020, in a Leisure Services department administration meeting, Defendant Hall informed Ms. Wingfield for the first time, in front of the rest of the staff, that some of her responsibilities would be taken away. The public nature of this announcement, contrasting with the fact that other members of the staff had been informed of similar shifts in responsibilities privately beforehand, unjustly blindsided and humiliated Ms. Wingfield, as if she was being told in front of the whole department that she couldn't handle her job.

17. Ms. Wingfield became emotional, discussing the issue with Defendant Hall and standing up to excuse herself and gather her thoughts. She did not raise her voice in anger or engage in any conduct unbefitting a professional.

18. Ms. Wingfield's immediate supervisor, Mr. Kitts, stood up in response, getting in Ms. Wingfield's personal space and telling her to "be quiet and sit down."

19. Ms. Wingfield was temporarily suspended and received what was characterized as a "Major" write-up because of what happened in this staff meeting.

20. The charge did not accuse Ms. Wingfield of insubordination but simply the vague category of "other," and she was told that simply by speaking up for herself she had upset some of her colleagues who found it unprofessional.

21. Ms. Wingfield appealed the write-up and suspension but it was upheld by the City of Dothan Personnel Board.

22. Four of Ms. Wingfield's fellow employees, two of whom were white and two of whom were Black, submitted affidavits to the city stating that Ms. Wingfield had not been unprofessional, angry, or hostile during the meeting.

23. The two Black employees who wrote affidavits supporting Ms. Wingfield had also had incidents where they had been profiled or discriminated against by Mr. Kitts.

24. Ms. Wingfield went to the Equal Employment Opportunity Commission and made an informal complaint regarding her treatment and subsequent unjust discipline following the meeting in November 2020, and

specifically her treatment by white individuals within the almost entirely white Finance department, but nothing was done.

25. In May of 2021, the feeding program passed an audit performed by the State Department.

26. The feeding program was awarded $67,000 in grant funds between May 27 and June 1 of 2021, $30,000 of which Defendant Hall had objected to applying for.

27. In November of 2021, the finance department reported on the revenues and expenses of the feeding program, with no red flags being raised.

28. On February 7, 2022, Ms. Wingfield requested funds from the finance department for some pieces of furniture and was told there were not enough funds to accommodate the request.

29. Over the next few days, Ms. Wingfield became concerned that there may have been mishandling or misuse of funds, because the city had been making monthly profits from the feeding program since March of 2020 and had also been awarded significant grant money.

30. Ms. Wingfield spoke with an education specialist from the State Department and found that there was a discrepancy between the balance that the finance department was reporting and the balance that the State Department calculated.

31. Ms. Wingfield determined that the finance department had improperly used reimbursement money to pay staff during the COVID shutdown.

32. On February 10, 2022, an updated and approved compensation plan was sent to the finance department, and the feeding program was awarded another $6,600 in grants.

33. Suddenly, and upon information and belief in response to Ms. Wingfield's questioning of their financial practices, the financial department led by Defendant Marcus became hostile towards Ms. Wingfield and began to attempt to undermine Ms. Wingfield's leadership.

34. On February 14, 2022, Ms. Wingfield received a request from Defendant Marcus for financial numbers for the feeding program. She received a similar request on February 22, 2022 from the city manager and commissioners.

35. At the beginning of March 2022, Ms. Wingfield received a request from the finance department to make an adjustment in the labor costs of the program, which she sent to the state department for approval.

36. On March 10, 2022, Defendant Hall requested financial information regarding the feeding program from Mr. Kitts, which was delivered to her on April 6, 2022.

37. On April 7, 2022, a State Department representative met with members of city administration, including the finance auditor, Defendants Hall and

Marcus and Ms. Wingfield. He presented Ms. Wingfield with an award due to the large amount of reimbursement that the city had received for the program and praised her for doing an outstanding job. He stated that the city had been reimbursed $2 million for the year, with an overpay of only $250. The finance auditor said that the finances of the program looked good, and a city commissioner who is also a CPA looked over the books and approved them.

38. In the spring of 2022, the City of Dothan took bids to find a vendor to prepare meals for the feeding program in the summer of 2022. Three vendors entered bids for the contract.

39. Soon after the bid was completed and awarded, one of the vendors who did not win the bid submitted an affidavit to the City of Dothan claiming that Ms. Wingfield had somehow improperly influenced the winner of the bid.

40. Ms. Wingfield had no influence or impact on the bid award.

41. Defendants Hall and Marcus were well aware that Ms. Wingfield and Ms. Wingfield's position could have no influence or impact on the bid award.

42. On May 15, 2022, Ms. Wingfield was arrested due to a misunderstanding regarding a check that she had used to pay for a vehicle several years prior. Ms. Wingfield immediately paid for the check and any and all fees surrounding the charge.

43. The following day, Ms. Wingfield informed Defendant Hall and the personnel director of the arrest, and that she had cleared up the issue.

44. That day, Defendant Hall and the personnel director informed Ms. Wingfield of the affidavit filed by the bid loser and questioned her repeatedly about her relationship with the winning bidder. Defendant Hall told Ms. Wingfield that Hall was taking her off of the feeding program until they could sort things out.

45. The following day, May 17, 2022, Defendant Hall and the personnel director again questioned Ms. Wingfield about the feeding program, asking her if she had trained the staff and telling her that she needed to fire four of the staff members. After Ms. Wingfield explained the roles of all four employees, Defendant Hall and the personnel director said that instead only two of the employees needed to be fired.

46. After Ms. Wingfield placed the to-be-fired staff members on administrative leave as per an order from Defendant Hall and collected their record books, Ms. Wingfield herself was placed on administrative leave by Defendant Hall. Hall told Ms. Wingfield that she was being placed on administrative leave because of the check for which she had been arrested and because of the issue with the feeding program, and also told Ms. Wingfield that she would be filing criminal charges.

47. Ms. Wingfield has not had any charges brought against her as a result of these events.

48. Ms. Wingfield continued to believe that the above were the reasons for her discipline, until June 17, 2022 when she received a notice for a determination hearing to be held on June 21, 2022. The notice contained a number of specious, fictitious, vague accusations, completely unrelated to the initial justifications that Ms. Wingfield was given for her suspension, that upon information and belief were excuses that were created because the initial justifications for getting rid of Ms. Wingfield could not stand up to scrutiny.

49. The false charges were written in such a way that someone who had actually performed the prohibited actions may have recognized what specifics were being referred to, but an innocent person such as Ms. Wingfield was not properly put on notice as to the charges against her.

50. Ms. Wingfield was terminated effective June 22, 2022 as a result of the charges caused to be brought against her by Defendants Marcus, Hall, and City of Dothan.

51. Ms. Wingfield appealed her termination to the City of Dothan Personnel Board, but the Board did not grant her relief.

52. In the termination hearing and the Personnel Board hearing that followed, the City could present no direct evidence that Ms. Wingfield was guilty of the false charges against her.

53. The so-called investigation into Ms. Wingfield's alleged wrongdoing was performed by Defendants Marcus and Hall.

54. The so-called investigation occurred almost entirely after Ms. Wingfield's termination.

55. During the so-called investigation into the alleged wrongdoing by Ms. Wingfield, Defendant Marcus did not speak with the State Department despite the fact that the alleged wrongdoing largely involved financial mismanagement.

56. Defendant Hall did speak with the State Department and was told that they had no problem with the way that the feeding program was being run.

57. Despite the original justification for Ms. Wingfield's suspension regarding the bidding of the summer feeding vendor position, the person in charge of the bidding process was never interviewed as a part of the investigation.

58. Defendant Hall admitted that the investigation found no improprieties with the bidding process.

59. Ms. Wingfield was never interviewed during the investigation.

60. Ms. Wingfield's direct supervisor, Mr. Kitts, was never interviewed during the investigation.

61. Mr. Kitts was never a subject of the investigation, despite having the ability to oversee Ms. Wingfield's actions and despite having gone through the same training process for managing the feeding program.

62. Defendants proceeded to smear Ms. Wingfield's name in local media, broadcasting to the entire nearby area that Ms. Wingfield was an untrustworthy employee, a liar, a thief, and potentially a criminal.

63. The allegations against Ms. Wingfield, their publishing, and the unjust termination of her employment has had grievous impacts on her physical, emotional, and mental health. She has been unable to find continuous employment and suffered catastrophic financial loss. She has lost health insurance and suffers from sleep apnea, high cholesterol, vertigo, constant head, back, and neck pain. Her reputation in the community has suffered with the public questioning of her integrity.

## CLAIM FOR RELIEF

### Count 1
### Title VII
### Racial Discrimination
### Defendant City of Dothan

64. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

65. Plaintiff is a black woman.

66. Plaintiff was admonished and disciplined for speaking up for herself in a staff meeting.

67. Plaintiff was profiled as an "angry Black woman" despite simply staying calm and attempting to understand what was happening with her job duties.

68. White and Black employees came to Plaintiff's defense, but leadership was determined to teach Plaintiff a lesson and put her in her place.

69. Plaintiff was accused of serious criminal and/or negligent mismanagement, despite having done nothing of the sort and being an exemplary employee for many years.

70. These accusations took place after Plaintiff, labeled as the "angry Black woman," dared to defend her own job position and to question the financial management of the white employees within the finance department.

71. The actions of Defendants harassing and discriminating against Plaintiff was taken intentionally and because of Plaintiff's race.

## Count 2
## Title VII
## Hostile Work Environment
## Defendant City of Dothan

72. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

73. The aforementioned harassment by Defendant became so significant and constant as to render Plaintiff's work environment on the job hostile and abusive.

74. Defendant's employees were determined to ensure that Plaintiff was seen as unfit for and incompetent in her position because Plaintiff had the "audacity" to question the doings of the white employees within the finance department.

75. As is predicable when someone is confronted with a constant stream of racist abuse, this harassment caused Plaintiff significant mental and emotional damage.

**Count 3**
**Title VII**
**Retaliation**
**Defendant City of Dothan**

76. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

77. Plaintiff engaged in protected activity by complaining of the way that she was being treated, particularly as a result of the unjust discipline following the November 2020 meeting.

78. Defendants subjected Plaintiff to a pattern of further and heightened harassment, up to and including termination, after and because of Plaintiff's complaints.

79. Defendants took the above detrimental actions on Plaintiff's work environment in part because of Plaintiff reporting the harassment.

## Count 4
## 42 U.S.C. § 1981
## Racial Discrimination
## All Defendants

80. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

81. Plaintiff is a black woman.

82. Plaintiff was admonished and disciplined for speaking up for herself in a staff meeting.

83. Plaintiff was profiled as an "angry Black woman" despite simply staying calm and attempting to understand what was happening with her job duties.

84. White and Black employees came to Plaintiff's defense, but leadership was determined to teach Plaintiff a lesson and put her in her place.

85. Plaintiff was accused of serious criminal and/or negligent mismanagement, despite having done nothing of the sort and being an exemplary employee for many years.

86. These accusations took place after Plaintiff, labeled as the "angry Black woman," dared to defend her own job position and to question the financial management of the white employees within the finance department.

87. Plaintiff was subject to racial harassment and discrimination as described above in her employment with the City of Dothan, causing interference with Plaintiff's right to a work environment free from racial discrimination under their employment contract with the City

88. The actions of Defendants harassing and discriminating against Plaintiff were taken intentionally and because of Plaintiff's race.

## Count 5
## 42 U.S.C. § 1981
## Hostile Work Environment
## All Defendants

89. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

90. The aforementioned harassment by Defendant became so significant and constant as to render Plaintiff's work environment on the job hostile and abusive.

91. Defendant's employees were determined to ensure that Plaintiff was seen as unfit for and incompetent in her position because Plaintiff had the "audacity" to question the doings of the white employees within the finance department.

92. As is predicable when someone is confronted with a constant stream of racist abuse, this harassment caused Plaintiff significant mental and emotional damage.

**Count 6**
**42 U.S.C. § 1981**
**Retaliation**
**All Defendants**

93. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

94. Plaintiff engaged in protected activity by complaining of the way that she was being treated, particularly as a result of the unjust discipline following the November 2020 meeting.

95. Defendants subjected Plaintiff to a pattern of further and heightened harassment, up to and including termination, after and because of Plaintiff's complaints.

96. Defendants took the above detrimental actions on Plaintiff's work environment in part because of Plaintiff reporting the harassment.

**Count 7**
**42 U.S.C. § 1983**
**Deprivation of Due Process - Property**
**All Defendants**

97. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

98. Plaintiff was discharged from her employment without a sufficient explanation as to what she was alleged to have done.

99. Plaintiff was owed the right to fully understand and defend herself

against the charges that Defendants alleged against her.

100. Defendants terminated Plaintiff without regard for her right to an opportunity to fully defend herself.

## Count 8
## 42 U.S.C. § 1983
## Deprivation of Due Process - Liberty
## All Defendants

101. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

102. Plaintiff was discharged from her employment as a result of false and defamatory charges being laid against her.

103. Those charges were put forth publicly in such a way as to gravely harm Plaintiff's reputation in the local community and inhibit her access to gainful employment.

## Count 9
## 42 U.S.C. § 1983
## First Amendment Retaliation
## All Defendants

104. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

105. Plaintiff's complaints regarding her treatment in the November 2020 staff meeting were protected speech under the First Amendment.

106. The subsequent hostile work environment that Plaintiff was subjected to would have the chilling effect of likely deterring a person or ordinary firmness

from continuing to exercise their First Amendment right to speak, and was intended to have such effect.

### Count 10
### Alabama State Law
### Defamation
### All Defendants

107. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-63 of the Complaint.

108. Plaintiff was discharged from her employment as a result of false and defamatory charges being laid against her.

109. Those charges were put forth publicly in such a way as to gravely harm Plaintiff's reputation in the local community and inhibit her access to gainful employment.

110. Defendants put forth the allegations against Plaintiff knowing of their untruth, or in the alternative with reckless disregard for their truthfulness.

### PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request the following relief:

   a. That this Court render a judgment finding the Defendants liable for the aforementioned causes of action;

b. That is Court issue an Order requiring the Defendants to pay the Plaintiffs an award of damages to compensate emotional, physical, and psychological injury;

c. An award of punitive damages;

d. Appropriate injunctive relief issue against City of Dothan;

e. That this Court issue an Order requiring the Defendants to pay for all litigation costs, expenses, and reasonable attorney's fees associated with the filing of this action pursuant to 42 U.S.C. 1988; and

f. All other relief to which Plaintiffs are entitled or that the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

*/s/Richard A. Rice*
Richard A. Rice
THE RICE FIRM, LLC
420 20th Street North, Suite 2200
Birmingham, AL 35203
Telephone 205 618-8733
rrice@rice-lawfirm.com