IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEPHANIE WINGFIELD,            )
                                )
    Plaintiff,                  )
                                )
v.                              )          Case No. 1:23-cv-153-CWB
                                )
ALISON HALL, ROMONA MARCUS,     )
and CITY OF DOTHAN,             )
                                )
    Defendants.                 )

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Stephanie Wingfield ("Plaintiff") has filed claims against the City of Dothan, Alabama under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and claims against the City of Dothan, Alison Hall, and Romona Marcus under 42 U.S.C. §§ 1981 and 1983. (Doc. 32). Plaintiff also has asserted a state law claim for defamation against all of the defendants. (*Id.*). Central to Plaintiff's claims are allegations that she was discriminated against on the basis of her race and that she was unlawfully discharged from her employment.

Now pending for resolution is a motion to dismiss (Doc. 36) filed by the defendants ("Defendants") collectively. The court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, and all parties previously consented to the exercise of dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c) (*see* Docs. 27 & 28). For the reasons set forth below, the court concludes that Defendants' motion to dismiss is due to be granted in part and denied in part. This action will proceed only on Plaintiff's Title VII claim for racial discrimination against the City of Dothan.

## II.      Factual and Procedural Background[1]

Plaintiff is an African American female who was employed by the City of Dothan, Alabama as its Recreation Program Coordinator from 2015 through June of 2022.  (Doc. 32 at ¶¶ 5, 10).   In that capacity, Plaintiff oversaw a local feeding program that provided free meals to children 18 years of age and younger.  (*Id.* at ¶¶ 10-12).  The City of Dothan received reimbursement for the meals from the Alabama Department of Education.  (*Id.* at ¶ 11).  Defendant Hall was an administrator within the Department of Leisure Services for the City of Dothan and became Director for the Department of Leisure Services in 2020.  (*Id.* at ¶ 7).  Defendant Marcus at all relevant times acted as the Director of the Finance Department for the City of Dothan.  (*Id.* at ¶ 8).

Shortly after becoming Director for the Department of Leisure Services, Defendant Hall informed Plaintiff in a November 2020 staff meeting that some of her responsibilities were being removed.  (*Id.* at ¶ 17).  Plaintiff allegedly felt blindsided and humiliated to have been so informed in front of the entire department when others had been informed privately of similar changes. (*Id.*).  Plaintiff thus became emotional and attempted to excuse herself from the meeting.  (*Id.* at ¶ 18).  Plaintiff's immediate supervisor, Mr. Kitts, then stood up, "got in her personal space," and told her to "be quiet and sit down."  (*Id.* at ¶ 19).  Moreover, Plaintiff was temporarily suspended and received what was characterized as a "Major" write-up due to the incident.  (*Id.* at ¶ 20).  The basis for the write-up was marked as "other," and Plaintiff was told that she had upset some of her

---

[1] The "facts" stated herein are gleaned exclusively from the allegations in the Amended Complaint, the contents of those documents properly annexed thereto, and matters of which judicial notice may be taken.  *See, e.g., Mack v. Alabama Dep't of Youth Servs.*, 106 F. Supp. 2d 1256, 1261 (M.D. Ala. 2000) (pursuant to Federal Rule of Evidence 201, the court took judicial notice of the records of the Circuit Court for Montgomery County, Alabama, which reflected that no appeal was taken in the plaintiff's state court case);  *see also Collier v. Buckner*, 303 F. Supp. 3d 1232, 1258 n.24 (M.D. Ala. 2018) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

colleagues who found her conduct unprofessional.  (*Id*. at ¶ 21).  Plaintiff denies that she raised her voice in anger or engaged in any other type of inappropriate conduct.  (*Id*. at ¶ 18).

Plaintiff appealed, but the City of Dothan Personnel Board upheld the write-up and suspension even though four employees—two of whom were white and two of whom were black—submitted affidavits stating that Plaintiff had not been unprofessional, angry, or hostile during the meeting.  (*Id*. at ¶¶ 22-23).  Plaintiff then made an informal complaint to the Equal Employment Opportunity Commission ("EEOC") but no action was taken.  (*Id*. at ¶ 25).

The feeding program was awarded $67,000 in grant funds between May 27, 2021 and June 1, 2021 and passed routine audits/reviews by the State Department.  (*Id*. at ¶¶ 26-28).  On February 7, 2022, however, Plaintiff was told by the Finance Department that there were not enough funds available for her to purchase certain pieces of furniture she had requested.  (*Id*. at ¶ 29).  Plaintiff became concerned that there may have been a mishandling or misuse of funds and confirmed that there indeed was a discrepancy between the balance that the finance department was reporting and the balance calculated by the State Department.  (*Id*. at ¶¶ 30-31).  According to Plaintiff, she ultimately determined that the Finance Department had improperly used reimbursement money to pay staff during the COVID shutdown.  (*Id*. at ¶ 32).  Plaintiff alleges that Defendant Marcus became hostile towards her and began undermining her leadership fdue to the financial questions being raised.  (*Id*. at ¶¶ 34-37).

In the spring of 2022, the City of Dothan took bids from three vendors to prepare meals for the feeding program in the upcoming summer.  (*Id*. at ¶ 39).  One of the unsuccessful vendors submitted an affidavit to the City of Dothan alleging that Plaintiff had improperly influenced the outcome.  (*Id*. at ¶ 40).  Defendant Hall and the personnel director then questioned Plaintiff about her relationship with the winning vendor and the feeding program generally.  (*Id*. at ¶¶ 44-46).

Defendant Hall subsequently placed Plaintiff on administrative leave and told her that she would be subject to criminal charges; but no such charges were ever filed.  (*Id*. at ¶¶ 47-48).

On June 17, 2022, Plaintiff received a notice of a determination hearing that was to be held on June 21, 2022.  (*Id*. at ¶ 49).  Plaintiff alleges that "[t]he notice contained a number of specious, fictitious, vague accusations, completely unrelated to the initial justifications that [she] was given for her suspension."  (*Id*. at ¶¶ 49-50).  The determination hearing was conducted on June 21, 2022 as scheduled (Doc. 24-1 at p. 9) and, on June 22, 2022, Plaintiff's employment was terminated (Doc. 32 at ¶ 51).  The termination decision stated as follows:

> You have been found in violation of the City of Dothan Rules and Regulations Major Offense, Sec. 3-42 (6) Action(s), or lack of action(s) that could endanger the life or health of self or others, that could cause undue financial loss to the City, negligence in carrying out assigned tasks or duties or responsibilities of one's position; and Sec. 3-43 (5) Intolerable Offense:  Deliberate falsification of records; and personal misrepresentation of statements given to a supervisor, officials, the public or Boards.  You are terminated immediately, Wednesday, June 22, 2022.

(Doc. 24-1 at p. 9).

Plaintiff appealed her termination to the Personnel Board on June 28, 2022.  (*Id*. at pp. 9-10; Doc. 32 at ¶52).  On July 27, 2022, the Personnel Board conducted a hearing regarding Plaintiff's appeal and took the matter under advisement.  (Doc. 24-1 at pp. 9-10; Doc. 24-2 at p. 66; Doc. 24-3 at p. 121).  On August 31, 2022, the Personnel Board affirmed the termination (Doc. 24-1 at pp. 9-11; Doc. 24-3 at p. 121), and Plaintiff filed an appeal to the Circuit Court of Houston County, Alabama on September 6, 2022 (Doc. 24-1 at pp. 2-4).  After an initial scheduling conference on October 18, 2022, the Circuit Court of Houston County entered an order on October 24, 2022 stating that its review would not be *de novo* and that it instead would proceed on the evidence contained in the transcript of the Personnel Board proceedings. (Doc. 24-3 at pp. 36-37).  In response, Plaintiff requested that the court "relieve her from the

4

portion of th[e] Court's October 24, 2022 judgment that denied her request for de novo review."

(*Id*. at p. 42).  Plaintiff's request was denied.  (*Id*. at p. 45).

On November 21, 2022, Plaintiff filed a formal charge of discrimination with the EEOC.

(Doc. 24-4).  In her EEOC charge, Plaintiff listed race as the basis of discrimination and stated

that the earliest date the discrimination took place was June 22, 2022.  (*Id*.).  The narrative provided

by Plaintiff in the  EEOC charge stated as follows:

> I was accused falsely of causing undue loss to the City of Dothan, negligence of
> duty, endangering the loss of others, delivering falsified records, and making false
> statements.  I was terminated because of my race (Black), in violation of Title VII
> of the Civil Rights Act of 1964, as amended.  Since 2015, I have managed the
> Feeding Program.  The Feeding Program is managed by the Department of Leisure
> Services for the City of Dothan.  At all times, I have had two other supervisors
> who are also responsible for managing the Feeding Programs as well.  Each of them
> is white/Caucasian.  Alison S. Hall, Director and Roy Kitts, Assistant Director-
> Programs.  As it relates to the feeding program, we shared similar authority and
> responsibility for the integrity and management of the program.  On May 18, 2022,
> I was placed on Administrative Leave and did not return to work following
> that adverse action.  Although there was allegation that the Feeding Program had
> fundamental issues with record keeping and other issues related to the management
> of the program including training and the bidding process, neither of my
> comparators, Kitts or Hall, were investigated or subjected to any adverse actions.

(*Id*.).  On December 21, 2022, Plaintiff received a Notice of Right to Sue from the EEOC.

(Doc. 1-2).

On March 3, 2023, the Circuit Court of Houston County affirmed the Personnel Board's

decision to terminate Plaintiff's employment:

> This court has reviewed the record made in this case at the hearing conducted before
> the City of Dothan Personnel Board on July 27, 2022.  The court has also considered
> the arguments and briefs of the parties as to their respective positions.
>
> The court finds that Personnel Board's decision in this matter was supported by
> substantial evidence and further finds that the plaintiff Stephanie Wingfield was
> properly afforded due process throughout the termination proceedings at the
> City of Dothan.  Therefore, the decision of the City of Dothan Personnel Board as
> set forth in the Personnel Board Order No. 22-01, dated August 31, 2022, is hereby
> upheld and affirmed.

(Doc. 24-3 at p. 121).

On March 21, 2023, Plaintiff filed her complaint in this pending federal action.  (Doc. 1).  On March 30, 2023, Plaintiff appealed the decision of the Circuit Court of Houston County to the Alabama Court of Civil Appeals.  (Doc. 24-3 at pp. 122-25).  On July 10, 2023, Plaintiff filed her Amended Complaint in this action.  (Doc. 32).  And on December 8, 2023, the Alabama Court of Civil Appeals determined that there was insufficient legal evidence to support the Personnel Board's decision and reversed the decision of the Circuit Court of Houston County.  *See Wingfield v. City of Dothan*, No. CL-2023-0202, 2023 WL 8507062, *6 (Ala. Civ. App. Dec. 8, 2023).

## III.    Legal Standard

To survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007).  The standard for such a motion was explained in *Twombly* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), as follows:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678-79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.* at 680; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the court to assume the veracity of well-pleaded factual allegations and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] court may consider a document attached to a motion to dismiss ... if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. ... [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we

may consider such a document provided it meets the centrality requirement[.]") (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The court must accept all of the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  And the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim."  *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  The court need not, however, accept as true any legal conclusions couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555).

## IV.     Discussion

### A.     Plaintiff failed to exhaust her administrative remedies on the claims asserted in Counts 2 and 3.

Defendants contend that Plaintiff's Title VII claims against the City of Dothan for "Hostile Work Environment" in Count 2 and "Retaliation" in Count 3, as well as any Title VII claims for "Racial Discrimination" in Count 1 that are based on actions other than Plaintiff's termination, are due to be dismissed for failure to have exhausted administrative remedies with the EEOC.  (Doc. 36 at pp. 16-18).

It is axiomatic that a plaintiff seeking to bring suit against an employer under Title VII must first file an administrative charge of discrimination with the EEOC.  *See, e.g., Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005).  It is equally settled that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Georgia Dep't*

*of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation marks and citation omitted). In determining whether a plaintiff has exhausted administrative remedies, "the 'proper inquiry' is whether the 'plaintiff's complaint is like or related to, or grew out of, the allegations contained in the EEOC charge.'" *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (brackets omitted) (quoting *Gregory*, 355 F3d at 1280). "While a plaintiff is not permitted to allege new acts of discrimination in a complaint that were not raised in his EEOC Charge, the scope of an EEOC Charge 'should not be strictly interpreted' and any claim that 'can reasonably be expected to grow out of the charge of discrimination' is allowed, including claims that 'amplify, clarify, or more clearly focus the allegations in the EEOC charge.'" *Abbott v. Austal USA, LLC*, No. CV 1:22-00267,  2023 WL 3868571, *13 (S.D. Ala. June 7, 2023), *vacated*, No. CV 1:22-00267, 2023 WL 5599618 (S.D. Ala. Aug. 29, 2023) (quoting *Gregory*, 355 F.3d at 1280).

Here, Plaintiff's EEOC charge failed to assert claims for hostile work environment or retaliation—or allege facts from which such claims might reasonably be expected to arise. *See, e.g., Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840-41 (11th Cir. 2005) (*per curiam*) (finding that the plaintiff's EEOC charge, which was only marked racial discrimination, did not reasonably encompass a hostile work environment claim because "all of the factual allegations ... relate[d] to his termination"; "[n]othing in [the] EEOC charge related to incidents of harassment, nor did anything mention the dates on which they occurred[;]" rather, the plaintiff "noted the date of his termination as both the earliest and latest date of discriminatory conduct; explained that his termination ostensibly stemmed from attendance policy violations; and stated that white males with inferior attendance records were retained"); *Ramon v. AT&T Broadband*, 195 F. App'x 860, 866 (11th Cir. 2006) (*per curiam*) (finding that neither a hostile work environment claim nor a retaliation claim could have reasonably been expected to grow out of the allegations made by the

plaintiff in her EEOC charge: "Ramon has pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment," and she "did not check the retaliation box on the EEOC charge form and failed to illustrate in the charge her claim later made in the complaint that the [alleged adverse activity] was a result of her complaints and [seeking medical leave].");  *see also Jackson v. Marion Mil. Inst.*, No. CV 19-00629, 2020 WL 5985190, *6 (S.D. Ala. Sept. 8, 2020), *report and recommendation adopted*, No. CV 2:19-00629, 2020 WL 5985465 (S.D. Ala. Oct. 8, 2020) (finding that a hostile work environment claim could not reasonably be said to fall within the scope of the EEOC charge: "Jackson's charge and attached exhibits never mention a 'hostile work environment' or similar phrase.  Moreover, the factual allegations in the charge are not suggestive of the kind of repetitive non-discrete acts to establish a hostile work environment, nor do they suggest the requisite level of severity or pervasiveness of such acts.").

Plaintiff stated in her EEOC charge that the challenged discrimination began on June 22, 2022 and ended on August 31, 2022, with "Race" being listed as the sole basis for the alleged discrimination.  (Doc. 24-4 at p. 2).  In its entirety, the narrative from Plaintiff's EEOC charge stated as follows:

> I worked for the Respondent as a Program Coordinator at the time of my termination on June 26, 2022.  I was accused falsely of causing undue loss to the City of Dothan, negligence of duty, endangering the loss of others, delivering falsified records, and making false statements.  I was terminated because of my race (Black), in violation of Title VII of the Civil Rights Act of 1964, as amended.  Since 2015, I have managed the Feeding Program.  The Feeding Program is managed by the Department of Leisure Services for the City of Dothan.  At all times, I have had two other supervisors who are also responsible for managing the Feeding Programs as well.  Each of them is white/Caucasian.  Alison S. Hall, Director and Roy Kitts, Assistant Director - Programs.  As it relates to the feeding program, we shared similar authority and responsibility for the integrity and management of the program.  On May 18, 2022, I was placed on

Administrative Leave and did not return to work following that adverse action. Although there were allegations that the Feeding Program had fundamental issues with record keeping and other issues related to the management of the program including training and the bidding process, neither of my comparators, Kitts or Hall, were investigated or subjected to any adverse actions.

(*Id.*).   Nowhere in the narrative did Plaintiff allege any type of protected activity that could have given rise to a retaliation claim, nor did she allege any series of events that would have suggested a hostile work environment.  Tellingly, Plaintiff failed to include "hostile work environment," "retaliation," or any other similar descriptive phrase in the narrative.  All of Plaintiff's factual averments instead were related to the core allegation that "I was terminated because of my race (Black) …" and were focused on specifically identified comparators such that a reasonable investigation would not be expected to have expanded beyond the allegations of mismanagement temporally surrounding her termination.  Accordingly, Plaintiff's purported Title VII claims for "Hostile Work Environment" in Count 2 and "Retaliation" in Count 3 are due to be dismissed for failure to exhaust.  However, Plaintiff is not precluded from relying upon facts that "amplify, clarify, or more clearly focus the allegations in the EEOC charge" with respect to the claim for "Racial Discrimination" asserted in Count 1—as long as Plaintiff does not attempt to predicate her claim for "Racial Discrimination" upon any discrete act occurring more than 180 days prior to her formal November 21, 2022 EEOC charge.

> **B.** **Plaintiff failed to allege facts of a causal connection sufficient to support plausible claims for retaliation in Counts 3 and 6.**

In purporting to assert a Title VII claim for retaliation in Count 3, Plaintiff alleges that she "engaged in protected activity by complaining of the way that she was being treated, particularly as a result of the unjust discipline following the November 2020 meeting," that "Defendants subjected [her] to a pattern of further and heightened harassment, up to and including termination, after and because of Plaintiff's complaints," and that "Defendants took the above detrimental

actions on Plaintiff's work environment in part because of Plaintiff reporting the harassment." (Doc. 32 at ¶¶ 78-80). Plaintiff asserts identical allegations in Count 6 as a purported basis to assert a retaliation claim under 42 U.S.C. §§ 1983/1981. (*Id*. at ¶¶ 95-97). The only protected activity alleged in the Amended Complaint is the "informal complaint" that Plaintiff made with the EEOC following the November 2020 meeting. (*Id*. at ¶ 25).[2]

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008) (citation omitted); *Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2012). "These three elements create a presumption that the adverse action was the product of an intent to retaliate." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). "An employee engages in protected activity if he opposes an employment practice based on a good faith, reasonable belief that the practice violates Title VII or Section 1981. The opposition must be made know[n] to the employer in the form of a complaint or some overt rejection of what the employee believes to be an illegally discriminatory practice or decision." *Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1364 (N.D. Ga. 2014)

---

[2] Plaintiff's alleged comments at the November 2020 meeting cannot be deemed "protected activity" because there is no allegation that she asserted any type of unlawful discrimination at that time. Plaintiff's subsequent appeal of her write-up and suspension likewise cannot be deemed "protected activity" because there is no allegation that she asserted unlawful discrimination as a basis to challenge such discipline. *See, e.g., Canty v. Fry's Elecs., Inc.*, No. 1:09-CV-3508, 2012 WL 1038619, *8-9 (N.D. Ga. Feb. 12, 2012), *adopted by* 2012 WL 1038611 at *10 (N.D. Ga. Mar. 27, 2012) (dismissing plaintiff's complaint because his internal complaints to management were not protected activity when "they did not discuss any type of discrimination prohibited by Title VII"); *Quach v. Paragon Sys. Inc.*, No. 115CV00750, 2015 WL 13719674, *7 (N.D. Ga. Oct. 28, 2015) ("[D]espite the fact that plaintiff mentions complaining of a 'hostile work environment' in his complaint, he has failed to adequately state a retaliation claim because he has not alleged any factual basis for finding that his complaint was related to protected categories under Title VII, amounting to protected activity under the statute.").

(citations and internal quotation marks omitted).  Moreover, "the protected activity in a § 1981 retaliation claim is limited to race."  *Harris*, 846 F. Supp. 2d at 1241 (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997)).

Although Plaintiff's informal complaint to the EEOC would constitute protected activity, Plaintiff does not allege when—or even if—Defendants became aware of her informal complaint.  *See, e.g., Glover v. Donahoe*, 626 F. App'x 926, 931-32 (11th Cir. 2015) (finding that employee's allegations did not state a claim for retaliation when the plaintiff did not "allege that the [] decision-makers knew that [he] had contacted the EEOC or knew that [he] sought to report to the Postmaster a Title VII violation."); *Davis v. Alabama Dep't of Transp.*, No. 2:16CV583, 2017 WL 4391730, *15 (M.D. Ala. Aug. 2, 2017), *report and recommendation adopted*, *Davis v. Alabama Dep't of Transp.*, No. 2:16CV583, 2017 WL 4366726, *1 (M.D. Ala. Sept. 29, 2017) ("Plaintiff has not alleged these individuals knew he engaged in protected activity by filing an EEOC Charge in 2012. Accordingly, Plaintiff has not alleged facts showing that any individual Defendant who took adverse action against Plaintiff was aware of his protected expression.") (footnote omitted); *see also Santana v. Telemundo Network Grp. LLC*, No. 6:20-CV-1157, 2021 WL 678556, *4 (M.D. Fla. Feb. 22, 2021) ("Plaintiff has not alleged that the relevant decision-makers were aware of her protected activity and she has failed to allege sufficient facts regarding temporal proximity.").  And it also is clear that Plaintiff's retaliation claim under § 1983/1981 is not based on race but on the filing of the informal EEOC complaint.  (Doc. 32 at ¶¶ 95-96).  *See, e.g., Harris*, 846 F. Supp. 2d at 1242 ("Plaintiff's retaliation claim, as alleged, is not based on her *race* but based on her filing of an EEOC charge.  In other words, she does not allege that the retaliation (moving her office) was because of her skin color but because she had filed an administrative grievance.") (emphasis in original) (citing *Little*, 103 F.3d at 961).

Just as importantly, the allegations of the Amended Complaint reflect that Plaintiff was employed for a period of approximately nineteen months after the November 2020 meeting and that her June 2022 termination did not occur until approximately four months after she allegedly began to investigate/question financial irregularities during February 2022.  That chronology simply fails to support a plausible causal link between Plaintiff's protected activity and the eventual adverse employment action.  *See, e.g., Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (explaining that "mere temporal proximity, without more, must be "very close."") (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)); *Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985, 990-91 (11th Cir. 2020) (affirming dismissal in part because three-month gap was too long to support an inference of causation based on temporal proximity alone); *Henderson v. City of Birmingham*, 826 F. App'x 736, 743 (11th Cir. 2020) (finding that plausible retaliation claim was not stated because the passage of seven months, without more, was insufficient to show close temporal proximity between the protected activity and the adverse employment action); *see also McCrae v. Emory Univ.*,  No. 1:22-CV-3401, 2023 WL 6217372, *11 (N.D. Ga. May 24, 2023), *report and recommendation adopted*, No. 1:22-CV-3401, 2023 WL 6217376 (N.D. Ga. July 12, 2023) (finding that retaliation claims should be dismissed).  The temporal separation here falls well outside what has been deemed "very close," and the Amended Complaint does not allege the requisite degree of "more" to overcome such a gap. [3]

---

[3] As previously discussed, the Title VII retaliation claim asserted in Count 3 also is due to be dismissed due to Plaintiff's failure to exhaust administrative remedies, and any attempt to exhaust under Title VII would now be time barred.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Jordan v. City of Montgomery*, 283 F. App'x 766, 767 (11th Cir. 2008) ("In a non-deferral state, such as Alabama, a plaintiff must file an employment discrimination charge with the EEOC within 180 days after the date of the alleged discrimination.")

**C.    Plaintiff failed to allege facts of "but for" causation sufficient to support plausible claims under §§ 1983/1981 in Counts 4, 5, and 6.**

Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," and "[s]ection 1981 prohibits an employer from retaliating against its employee in response to the employee's complaint of race-based discrimination." *Braswell v. Allen*, 586 F. Supp. 2d 1297, 1310 (M.D. Ala. 2008). However, "§ 1983 provides the exclusive remedy against state actors for violations of the rights contained in § 1981." *King v. Butts Cnty. Ga.*, 576 F. App'x 923, 930 (11th Cir. 2014); *Hamner v. Tuscaloosa Cnty. Sch. Sys.*, No. 7:18-CV-01838, 2020 WL 5501234, *4 (N.D. Ala. Sept. 11, 2020) (stating that a plaintiff must enforce his or her § 1981 claim against individual defendants pursuant to § 1983).

To prevail in an action brought under § 1983, "a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "In an employment-discrimination context, the elements for §§ 1981 and 1983 are identical to those required to prove intentional discrimination under Title VII." *Rodemaker v. Shumphard*, 859 F. App'x  450, 451 (11th Cir. 2021). Unlike Title VII, however, "a § 1981 plaintiff 'must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.'" *Id*. at 452 (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, __U.S.__, 140 S. Ct. 1009, 1019 (2020)). While "[t]his does not require [a plaintiff] to prove that race was the *exclusive* cause of his

termination, ... it does require him to prove that but for his race he would not have been terminated." *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023) (emphasis in original). Further, "[w]hen [an] intentionally discriminating employee does not herself have decisionmaking authority, the plaintiff must plausibly allege that the discriminating employee's racial animus (1) was intended to cause and (2) did cause the contractual injury." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1297 (11th Cir. 2021).

Counts 4, 5, and 6 of the Amended Complaint purport to state claims against Defendants for racial discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1983 based upon alleged violations of 42 U.S.C. § 1981. (Doc. 32 at pp. 15-17). With respect to Count 4 for "Racial Discrimination," Plaintiff asserts the following:

82.     Plaintiff is a black woman.

83.     Plaintiff was admonished and disciplined for speaking up for herself in a staff meeting.

84.     Plaintiff was profiled as an "angry Black woman"[4] despite simply staying calm and attempting to understand what was happening with her job duties.

85.     White and Black employees came to Plaintiff's defense, but leadership was determined to teach Plaintiff a lesson and put her in her place.

86.     Plaintiff was accused of serious criminal and/or negligent mismanagement, despite having done nothing of the sort and being an exemplary employee for many years.

87.     These accusations took place after Plaintiff, labeled as the "angry Black woman," dared to defend her own job position and to question the financial management of the white employees within the finance department.

88.     Plaintiff was subject to racial harassment and discrimination as described above in her employment with the City of Dothan, causing interference with Plaintiff's right to a work environment free from racial discrimination under their employment contract with the City.

---

[4] Plaintiff uses quotation marks in alleging that she was profiled as an "angry Black woman," but she does not allege in the Amended Complaint that anyone actually referred to her as such.

89.     The actions of Defendants harassing and discriminating against Plaintiff were taken intentionally and because of Plaintiff's race.

(Doc. 32 at ¶¶ 82-89).  As to Count 5 for "Hostile Work Environment," Plaintiff further asserts that:

91.     The aforementioned harassment by Defendant became so significant and constant as to render Plaintiff's work environment on the job hostile and abusive.

92.     Defendant's employees were determined to ensure that Plaintiff was seen as unfit for and incompetent in her position because Plaintiff had the "audacity" to question the doings of the white employees within the finance department.

93.     As is predicable when someone is confronted with a constant stream of racist abuse, this harassment caused Plaintiff significant mental and emotional damage.

(*Id*. at ¶¶ 91-93).  And in Count 6 for "Retaliation," Plaintiff additionally alleges as follows:

95.      Plaintiff engaged in protected activity by complaining of the way that she was being treated, particularly as a result of the unjust discipline following the November 2020 meeting.

96.      Defendants subjected Plaintiff to a pattern of further and heightened harassment, up to and including termination, after and because of Plaintiff's complaints.

97.      Defendants took the above detrimental actions on Plaintiff's work environment in part because of Plaintiff reporting the harassment.

(*Id*. at ¶¶ 95-97).

Upon review of those allegations, along with the incorporated paragraphs 1 through 63, the court concludes that Plaintiff has not stated a plausible claim for relief under §§ 1983/1981. Plaintiff makes only vague and conclusory allegations devoid of actual facts suggesting any action that would not have been taken "but for" her race.  Plaintiff appears to allege that she was punished for getting emotional during the November 2020 meeting and for questioning financial practices of the financial department—but Plaintiff includes no facts to demonstrate that such treatment occurred because of her race rather than because of the underlying conduct.  (*See*

Doc. 32 at ¶¶ 21 & 34).   Nor does Plaintiff allege a sufficient factual basis to suggest that any similarly situated employees of a different race were treated more favorably.  *See, e.g., Rodemaker*, 859 F. App'x at 452-53 (disregarding conclusory allegations and finding that the plaintiff did not plead sufficient facts about the defendants' racially discriminatory intent in support of a claim under §§ 1981 and 1983 when the plaintiff alleged that he was singled out from 150 other employees but did not allege any facts about the race, duties, or employment histories of those employees, did not to allege any facts about his replacement, and did not allege any facts that showed he was treated differently from any non-white employees; the mere fact that the  school board's vote occurred along racial lines did not establish that the defendants discriminated against him because he was white; "So in sum, Rodemaker failed to allege sufficient facts to state a racial discrimination claim under §§1981 and 1983, including that, but-for his race, the defendants would have renewed his contract"); *Silien v. Waste Mgmt. Inc. of Fla.*, No. 22-CV-81531, 2022 WL 17685507, *4 (S.D. Fla. Nov. 10, 2022) (stating that allegations were too vague and conclusory to state a claim under § 1981 where the plaintiff did not specify the type of beratement he received from his supervisor, such as what he said, and that the plaintiff did not offer any factual content to support the allegation that the less desirable equipment and location assignments were based on race); *Quach*, 2015 WL 13719674 at *9 ("[P]laintiff's assertions that his 'counterparts' of a different race were treated more favorably 'are conclusory and [similarly] devoid of sufficient factual enhancement to plausibly suggest that [defendant] intentionally discriminated against [him] because of his race.' ...  Indeed, while he may have believed that his ultimate termination was due to his race, 'plaintiff's claim for race discrimination in his termination, without more facts, epitomizes speculation and does not state a claim under Rule 8(a)(2).'") (citations and internal quotation marks omitted); *McCurdy v.*

*State of Alabama Disability Determination Serv.*, No. 2:13CV934, 2015 WL 5737103, *14-15 (M.D. Ala. Sept. 30, 2015) (finding allegations that the plaintiff "was subjected to [racial] epithet … by [her] supervisor ... on 'several occasions,'" were not enough to constitute a hostile work environment claim as contemplated by the Eleventh Circuit and therefore could not survive the defendant's motion to dismiss) (collecting cases).[5]

**D.    Plaintiff has failed to plead plausible due process claims in Counts 7 and 8.**

In her purported claim for "Deprivation of Due Process – Property" in Count 7, Plaintiff alleges that she was "discharged from her employment without a sufficient explanation as to what she was alleged to have done," that she was "owed the right to fully understand and defend herself against the charges that Defendants had alleged against her," and that "Defendants terminated [her] without regard for her right to an opportunity to fully defend herself."  (Doc. 32 at ¶¶ 99-101). As to her claim for "Deprivation of Due Process – Liberty" in Count 8, Plaintiff alleges that she was "discharged from her employment as a result of false and defamatory charges being laid against her" and that "[t]hose charges were put forth publicly in such a way as to gravely harm

---

[5] Even had Plaintiff sufficiently stated a claim under §§ 1983/1981 generally, any such claim could not proceed against the City of Dothan.  Unlike with personal liability against an individual, "a governmental entity is liable under 1983 only when the entity itself is a 'moving force' behind the deprivation. …  [T]hus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citations omitted).  In other words, to establish liability in the official capacity, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [governmental entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978) and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986).  The Amended Complaint contains no allegation that the City of Dothan had an official custom or policy to engage in or permit discrimination, a hostile work environment, or retaliation based upon the race of an employee; nor is Defendant Hall or Defendant Marcus alleged to have been a final policymaker for the City of Dothan.

Plaintiff's reputation in the local community and inhibit her access to gainful employment." (*Id.* at ¶¶ 103-04). Plaintiff additionally incorporates all factual allegations set forth in paragraphs 1 through 63 of the Amended Complaint. (*Id.* at ¶¶ 98, 102).

The court concludes that Plaintiff has not adequately pleaded a plausible due process claim in either Count 7 or Court 8. The Amended Complaint reflects that Plaintiff was afforded an avenue of administrative review with the Personnel Board, followed by proceedings in the Circuit Court of Houston County, Alabama and ultimately the Alabama Court of Civil Appeals. Plaintiff argued in the Circuit Court of Houston County that she was not afforded due process before the Personnel Board (Doc. 24-3 at pp. 39, 41-42, 101, 116), and the Circuit Court of Houston County specifically found that Plaintiff indeed had been afforded due process throughout her termination proceedings (Doc. 24-3 at p. 121). It further appears that the Alabama Court of Civil Appeals subsequently granted Plaintiff recourse from her termination, *see Wingfield v. City of Dothan*, 2023 WL 8507062, and the court has been informed that Plaintiff is being reinstated to her employment (*see* Doc. 42 at p. 2, ¶ 4). Accordingly, Plaintiff's due process claims as pleaded are due to be dismissed.[6]

---

[6] Plaintiff argues that she attempted to supplement the record on appeal and raise the question of due process, was denied the opportunity to do so, and thus was not provided a "full and fair opportunity" to litigate her claims. (Doc. 38 at pp. 2-3, 5, 8). Plaintiff's reliance on *Bonner v. Kilgore*, No. 1:16-CV-01084, 2017 WL 1057633, *2-4 (N.D. Ala. Mar. 21, 2017) for the proposition that a party may not have had a full and fair opportunity to litigate a claim if the party was prevented from supplementing the record on appeal from an administrative board judgment (Doc. 38 at p. 3) is misplaced in that the plaintiff in *Bonner* requested to supplement the circuit court record with evidence of recordings that took place <u>during and on the same day as the personnel hearing</u>. *See Bonner*, 2017 WL 1057633 at *2-4, 9, 12. In any event, the record here reflects that the Circuit Court of Houston County did ultimately consider Plaintiff's due process argument and expressly found that the Personnel Board properly afforded Plaintiff due process. (Doc. 24-3 at p. 121).

**E.    Plaintiff has failed to plead facts of any protected speech sufficient to state a plausible First Amendment retaliation claim in Count 9.**

In Count 9, Plaintiff alleges that her "complaints regarding her treatment in the November 2020 staff meeting were protected speech under the First Amendment" and that the "subsequent hostile work environment that Plaintiff was subjected to would have the chilling effect of likely deterring a person o[f] ordinary firmness from continuing to exercise their First Amendment right to speak."  (Doc. 32 at ¶¶ 106-07).  Plaintiff also alleges that her "questions and due diligence regarding the funding that she believed was going missing within the Finance Department were protected speech under the First Amendment" and that "[t]he subsequent hostile work environment that [she] was subjected to would have the chilling effect of likely deterring a person o[f] ordinary firmness from continuing to exercise their First Amendment right to speak."  (*Id*. at ¶¶ 108-109).

"[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'"  *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (citation omitted).  To determine if a public employee's speech has First Amendment protection, the United States Supreme Court has established a two-part test: (1) "whether the employee spoke as a citizen on a matter of public concern," and (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."  *Id*. at 418.  As to the first question, it requires that "the employee must have (1) spoken as a citizen and (2) addressed matters of public concern."  *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007).  Thus, a court "must determine 'whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee.'"  *Id*. (citation omitted).  "'[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline.'" *Id.* at 1342 (citation omitted). "The central inquiry is whether the speech at issue 'owes its existence' to the employee's professional responsibilities," and "[f]actors such as the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's job may be relevant, but are not dispositive." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 618 (11th Cir. 2015) (citations omitted). "Whether the speech was given to a limited audience or as part of a public dialogue is also a consideration." *Vanlandingham v. City of Abbeville, Alabama*, 455 F. Supp. 3d 1259, 1265 (M.D. Ala. 2020) (citing *Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1221 (11th Cir. 2001)).

"For an employee's speech to rise to the level of public concern, it must relate to a matter of political, social, or other concern to the community." *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997). "To make this determination, [courts] consider the 'content, form, and context' of the speech." *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) (citation omitted). "A 'public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.'" *Boyce*, 510 F.3d at 1344 (citation omitted). "[T]he relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is 'whether the purpose of [the plaintiff's] speech was to raise issues of public concern.'" *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000) (citation omitted).

Here, Plaintiff's first category of allegedly protected speech was about "her treatment in the November 2020 staff meeting." (Doc. 32 at ¶ 106). There is no allegation that such speech referenced discrimination and certainly not discrimination directed at anyone other than Plaintiff; nor does Plaintiff allege that her complaints occurred in a public forum or outside the workplace.

Because the only alleged speech concerning the November 2020 meeting involves private speech focused on her own personal interests, Plaintiff has failed to state a First Amendment claim. *See Maggio*, 211 F.3d at 1353 ("[W]e conclude that Maggio did not speak primarily as a citizen on behalf of the public but instead spoke primarily as an employee upon matters of personal interest."); *Watkins v. Bowden*, 105 F.3d at 1353 (finding that speech "did not constitute speech on a matter of public concern" when "those complaints focused primarily how her colleagues 'behaved toward her and how that conduct affected her work'") (citation omitted); *Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1163 (11th Cir. 2015) ("We find that Appellants spoke as employees about matters of only personal interest, and their speech is therefore beyond the protection of the First Amendment."); *Tindal v. Montgomery Cnty. Comm'n*, 32 F.3d 1535, 1539-40 (11th Cir. 1994) ("We have held that no First Amendment protection attaches to speech that—for personal benefit—exposes *personally* suffered harassment or discrimination.") (citation omitted) (emphasis in original).

As to her alleged statements about the finances of the feeding program, Plaintiff asserts that managing the funds of the feeding program was not a part of her job description and that she therefore was not speaking as an employee.  (Doc. 38 at pp. 15-16).  But a full review of the Amended Complaint reveals allegations that Plaintiff "oversaw the At-Risk and Summer Feeding Programs," "requested funds from the finance department for some pieces of furniture and was told there were not enough funds to accommodate the request," "became concerned that there may have been mishandling or misuse of funds," "found that there was a discrepancy between the balance that the finance department was reporting and the balance that the State Department calculated," and "determined that the finance department had improperly used reimbursement money to pay staff during the COVID shutdown."  (Doc. 32 at ¶¶ 5, 29-32).  The allegations also

reflect that Plaintiff was involved at least to some decree with the program's finances, staffing, and vendors.  (*Id*. at ¶¶ 13, 35-58, 46, 56).  Plaintiff's alleged "questions and due diligence" (*Id*. at ¶ 108) therefore appear to fall squarely within the scope of her general professional responsibilities. *See, e.g., Boglin v. Bd. of Trustees of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1269 (N.D. Ala. 2018) ("[A]s the Eleventh Circuit has repeatedly found, an employee who makes internal reports regarding mismanagement and fraud generally speaks pursuant to her professional duties rather than as a citizen.") (citing *Alves*, 804 F.3d at 1164-65 (11th Cir. 2015), *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1285 (11th Cir. 2009), and *Phillips v. City of Dawsonville*, 499 F.3d 1239, 1242-43 (11th Cir. 2007) (finding that even though reporting financial misconduct was not an enumerated duty it was still made "pursuant" to the reporting employee's official duties and thus unprotected by the First Amendment)); *Forsyth v. Univ. of Alabama Bd. of Trustees*, No. 7:17-CV-00854, 2018 WL 1035126, *7 (N.D. Ala. Feb. 23, 2018) ("Plaintiff's asbestos-related reports concerned a subject matter of his job because he made them in an attempt to force University officials to properly remediate asbestos present at the worksites where he performed his job duties.") (citing *Boyce*, 510 F.3d at 1346, where the plaintiffs' emails to supervisors claiming to be overworked and commenting that children could be mistreated or die because they were unable to handle all the cases assigned to them were found to be primarily speaking about their workloads as government employees and not as citizens).  Further, Plaintiff fails to allege any facts as to whom, if anyone, she articulated her concerns, when and where she articulated her concerns, and in what manner she articulated her concerns.  Accordingly, Plaintiff has not stated

a plausible claim that she made any speech as a citizen on a matter of public concern so as to invoke First Amendment protection against retaliation.[7]

### F.   Plaintiff has failed to plead sufficient facts to state a plausible claim for defamation in Count 10.

To establish a claim for defamation under Alabama law, "the plaintiff must show that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988) (internal citations and footnote omitted). "Spoken words that impute to the person of whom they are spoken the commission of an indictable criminal offense involving infamy or moral turpitude constitute slander actionable per se." *Id.* at 1091. When a defamatory publication is actionable per se, "the law infers injury to reputation as a natural consequence of the defamation and, as a result, the plaintiff is entitled to presumed damages." *Id.* at 1092.

As to her purported defamation claim in Count 10, Plaintiff alleges the following:

111.   Plaintiff was discharged from her employment as a result of false and defamatory charges being laid against her.

112.   Those charges were put forth publicly in such a way as to gravely harm Plaintiff's reputation in the local community and inhibit her access to gainful employment.

---

[7] Even if Plaintiff's speech otherwise potentially could be found as rising to the level of invoking constitutional protection, it cannot be said that the circumstances were such "that a reasonable person in the defendant's position would have been on notice that his actions violated clearly-established federal law." *See Maggio*, 211 F.3d at 1354. Defendants Hall and Marcus therefore would be entitled to dismissal on the basis of qualified immunity. *Id.* ("[A] defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful.") (citing *Martin v. Baugh*, 141 F.3d 1417, 1420 (11th Cir. 1998)); *see also Phillips*, 499 F3d at 1243 n.3 (stating that because "the preexisting law at the time of the pertinent [] decision was unclear on whether the First Amendment would be violated …, [q]ualified immunity would protect the individual defendants if they were otherwise liable.").

113.    Defendants put forth the allegations against Plaintiff knowing of their untruth, or in the alternative with reckless disregard for their truthfulness.

(Doc. 32 at ¶¶ 111-13).  Plaintiff elsewhere asserts that "Defendants proceeded to smear [her] name in local media, broadcasting to the entire nearby area that [she] was an untrustworthy employee, a liar, a thief, and potentially a criminal."  (*Id*. at ¶ 63).  Defendants contend that such allegations fail  to sufficiently plead a defamation claim (Doc. 36 at p. 33), and Plaintiff has offered no response to that argument (*see* Doc. 38).

The court agrees that Plaintiff's generalized allegations are inadequate to state a plausible claim for defamation.  Plaintiff makes only vague and conclusory allegations against Defendants collectively without specifying who engaged in any particular conduct that would be actionable as defamation, what allegedly defamatory comments were made, and when the allegedly defamatory comments were made.  *See, e.g., Collier v. Buckner*, 303 F. Supp. 3d 1232, 1279 (M.D. Ala. 2018) (dismissing plaintiffs' defamation claims where the plaintiffs failed to clearly and specifically identify each relevant defendant's alleged acts or omissions in a manner sufficient for each defendant to know how he or she was alleged to be personally involved with the claim and the factual and legal grounds upon which he or she was alleged to be liable to which plaintiff); *Collins v. BSI Fin. Servs.*, No. 2:16-CV-262, 2017 WL 1045062, *3 (M.D. Ala. Mar. 17, 2017) (dismissing complaint where the plaintiffs failed to allege any additional facts showing which defendant(s) made which defamatory statements, what the defamatory statements were, when the defamatory statements were made, or towards whom they were directed).  Accordingly, Plaintiff's purported claim for defamation in Count 10 is due to be dismissed.[8]

---

[8] Defendants correctly observe that Plaintiff failed to respond to their arguments for dismissal of the defamation claim.  (Doc. 39 at p. 16).  Some courts have found that "[t]he failure to respond to arguments regarding claims addressed in a motion to dismiss is [a] sufficient basis to dismiss such claims as abandoned or by default."  *Fawcett v. Carnival Corp.*, No. 23-21499-CIV,

**G.    Plaintiff may proceed on the Title VII claim for "Racial Discrimination" asserted against the City of Dothan in Count 1.**

Defendants contend that the Amended Complaint is a shotgun pleading consisting of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and that all of Plaintiff's claims are therefore due to be dismissed.  (Doc. 36 at p. 35). Plaintiff's remaining claim is a Title VII race discrimination claim against the City of Dothan. (Doc. 32 at pp. 12-13)  The court concludes that Plaintiff has pleaded that claim sufficiently for purposes of Rule 8(a).  *Twombly*, 550 U.S. at 555 (stating that the purpose of the federal pleading requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests") (internal quotation marks and citation omitted) (*See also* Doc. 32 at ¶¶ 3, 5, 28, 38, 42, 49-51, 53-55, 57-62, 65-66, 70-72).

---

2023 WL 4424195, *4 (S.D. Fla. July 10, 2023); *see also Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (dismissing claims as abandoned where the plaintiff failed to respond to the defendants' arguments concerning the dismissal of those claims); *U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, No. 09-22253-CIV, 2012 WL 2871264, *9 (S.D. Fla. July 12, 2012) ("The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim."); *Phan v. Accredited Home Lenders Holding Co.*, No. 3:09-cv-328-J-32, 2010 WL 1268013, *5 (M.D. Fla. Mar. 29, 2010) (dismissing two counts of the complaint as abandoned when the plaintiff failed to respond to arguments for dismissal and did not re-plead the allegations in a subsequent complaint).  Nonetheless, the court will elect to address Plaintiff's defamation claim on the merits.  *See, e.g. Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007) ("Boyd did not abandon his due process and malicious prosecution claims by failing to adequately address them in his response brief. The appropriate inquiry at this stage of the litigation should have been whether the allegations of the complaint plausibly indicate that Boyd has a claim for relief."); *Stewart v. Bureaus Inv. Grp. No. 1, LLC*, 24 F. Supp. 3d 1142, 1156 n.18 (M.D. Ala. 2014) ("At this stage of the litigation, the court will not deem any claim abandoned for Ms. Stewart's unresponsiveness to an argument lodged by Defendants. ... The focus here, like the focus during review of a motion to dismiss, belongs on the adequacy of the proposed pleading.") (citation omitted); *Moore v. Lowe*, 591 F. Supp. 3d 1087, 1109 n.18 (N.D. Ala. 2022), *appeal dismissed*, No. 22-13187, 2024 WL 227897 (11th Cir. Jan. 22, 2024) (concluding that plaintiff did not abandon claim by failing to address it in response brief to the defendants' motion to dismiss).

The court rejects Defendants' contention that the Title VII claim being asserted in Count 1 is barred by the doctrine of res judicata.  (Doc. 36 at p. 10; Doc. 39 at pp. 3, 8).  In *Ex parte Boyette*, 728 So. 2d 644 (Ala. 1998), the Alabama Supreme Court addressed the following similar question: "May Boyette pursue [an ADEA claim], which is collateral to the proceedings by which his employment with the county was terminated, or is this action barred by a res judicata effect of his failure to raise the ADEA claim in those proceedings?"  *Id*. at 645.  There, the provision in question provided that "[t]he decision of the panel based upon all proceedings before the panel shall be final subject to appeal by either party to the circuit court to review questions of law and the question of whether or not the decision or order of the panel is supported by the substantial and legal evidence." *Id*. (citing Ala. Code § 45-37-121.19(a)).  After observing that "administrative agencies ordinarily have limited authority to decide allegations of constitutional and statutory violations, and appellate review of agency decisions has been limited to the questions within the agency's authority," the court concluded that, "[b]ecause [Ala. Code § 45-37-121.19] does not give the broad power to grant relief ..., Boyette's collateral action is 'not only proper, but ... the only avenue available' for him to raise his ADEA claim." *Id*. at 649 (emphasis omitted) (citing *Ex parte Averyt*, 487 So. 2d 912 (Ala. 1986)).

Applying the same rationale in view of Ala. Code § 45-35A-51.32 results in a conclusion here that the Personnel Board did not have jurisdiction to hear Plaintiff's Title VII claim and that Plaintiff therefore did not have a full and fair opportunity to litigate her Title VII claim before that body or on limited appeal to the Circuit Court of Houston County.  *Smith*, 72 So. 3d at 697. Although Plaintiff could have filed a collateral action invoking the general jurisdiction of the state court, *see Bonner*, 2017 WL 1057633 at *12 ("[T]he only avenue by which a party may raise constitutional claims, or other claims beyond the purview of the board, is a 'separate and distinct

collateral suit' that invokes the general jurisdiction of the circuit court, thereby allowing it to consider additional evidence beyond the administrative record.") (citations omitted), nothing required Plaintiff to do so.  Stated differently, Plaintiff remained free to file her Title VII claim in federal court without facing a res judicata bar.

## V.      Conclusion

For the reasons set forth above, it is hereby **ORDERED** that Defendants' motion to dismiss (Doc. 36) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- all claims asserted against the City of Dothan are dismissed with prejudice, except for the Title VII claim for race discrimination asserted in Count 1;

- all claims asserted against Defendant Hall are dismissed with prejudice; and

- all claims asserted against Defendant Marcus are dismissed with prejudice.

This action shall proceed solely against the City of Dothan and solely on the Title VII claim for race discrimination asserted in Count One.

**DONE** this the 30th day of March 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**